```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
KING'S CHOICE NECKWEAR, INC., on behalf :
of itself and all others similarly      :
situated,                               :    09 Civ. 3980 (DLC)
                         Plaintiff,     :
                                        :    OPINION & ORDER
               -v-                      :
                                        :
PITNEY BOWES, INC., PITNEY BOWES CREDIT :
CORPORATION, and PITNEY BOWES GLOBAL    :
FINANCIAL SERVICES, LLC,                :
                         Defendants.    :
                                        :
----------------------------------------X
```

Appearances:

For Plaintiff:

Steven Wittels
Sanford Wittels & Heisler, LLP
950 Third Ave., 10th Floor
New York, NY 10022

For Defendants:

Jonathan Cooperman
James Nealon
Kelley Drye & Warren LLP
101 Park Ave.
New York, NY 10178

DENISE COTE, District Judge:

The plaintiff terminated its lease of equipment from the defendants and was charged an equipment return fee of $100 pursuant to a lease agreement. In this putative class action, the plaintiff claims the return fee was excessive and therefore constituted an unfair trade practice and breach of contract.

For the following reasons, the defendants' motion to dismiss this action is granted.

BACKGROUND

The following facts are drawn from the November 4, 2009 second amended complaint ("SAC") and are assumed to be true for the purposes of deciding the motion to dismiss.  Kings Choice Neckwear, Inc. ("Kings Choice") is a necktie manufacturing company that has stopped making neckties and is closing.[1]  Defendants Pitney Bowes, Inc., Pitney Bowes Credit Corporation, and Pitney Bowes Global Financial Services, LLC (collectively, "Pitney Bowes" or "defendants") manufacture and lease, <u>inter alia</u>, postage meters.

On January 24, 2002, Pitney Bowes executed an agreement to lease a postage meter to Kings Choice ("Lease Agreement") for fifty-one months.  The Lease Agreement includes a paragraph entitled "Return of Equipment," which provides

> After completion of your payment and performance
> obligations under this Lease and expiration of the
> Lease . . . or cancellation of the Lease, you shall,
> at our option, either make the Equipment immediately
> available to us, or return the Equipment to us as
> soon as possible at the location we designate, in
> its original condition, reasonable wear and tear

---

[1] At a June 5, 2009 conference, plaintiff's counsel admitted that King's Choice ceased business in late 2008, that is, prior to the filing of this lawsuit.  Moreover, it never paid the $100 fee at issue in this litigation.  Apparently, plaintiff's counsel has made a cottage industry of filing class actions in the name of the plaintiff.

>excepted.  Unless we otherwise direct, the Equipment
>must be properly crated, insured and shipped,
>freight prepaid.  <u>You shall pay us our then
>applicable Equipment return fee</u>.

(Emphasis supplied).  After the Lease Agreement expired in April 2006, Kings Choice continued to lease the postage meter on a month-to-month basis under the original lease terms.

On December 10, 2008, Kings Choice called Pitney Bowes to terminate its lease.  That day, a Pitney Bowes employee emailed Kings Choice instructions for returning the postage meter.  The email said "Your lease agreement as indicated above will be fulfilled upon receipt of the equipment returned in good working order.  Please disregard any further lease invoices."  On December 17, 2008, Kings Choice used a box and a prepaid self-addressed UPS label provided by Pitney Bowes to ship the postage meter back to Pitney Bowes.  The cost of mailing the postage meter to Pitney Bowes, according to the UPS website, was approximately $11.90.  On January 6, 2009, Pitney Bowes sent Kings Choice an "Equipment Return invoice" for $100, stating that this was the cost incurred by Pitney Bowes to "recover" its postage equipment.[2]  Kings Choice did not pay this fee.

On April 22, 2009, Kings Choice filed this putative class action on behalf of all other similarly situated Pitney Bowes

---

[2] Pitney Bowes claims its fee of $100 covered the cost of postage as well as the cost of refurbishing the machine or scrapping it in an environmentally friendly way.

3

customers, alleging a violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a – 42-110q, a breach of contract, a breach of the covenant of good faith and fair dealing, and unjust enrichment.  Kings Choice claims that its contract with Pitney Bowes limited the equipment return fee to the cost of mailing the postage meter back to Pitney Bowes.  Kings Choice alleges that the $100 fee was "grossly disproportionate" because it "far exceeds the actual cost of mailing or returning the equipment to Pitney Bowes."

Pitney Bowes moved to dismiss the complaint on June 15, 2009.  Kings Choice filed its opposition on August 3, and it attached an amended complaint to that submission.  In this opposition, Kings Choice also requested a further opportunity to amend its complaint.  In a conference with the Court on October 28, Kings Choice was advised that it would be given a final opportunity to amend.  Kings Choice submitted its proposed second amended complaint ("SAC") dated November 4, and by Order dated November 16, the SAC was accepted for filing.[3]  The parties' supplemental briefing in connection with Pitney Bowes' motion to dismiss the SAC became fully submitted on December 4.

---

[3] Kings Choice filed its SAC on December 8.

4

DISCUSSION

A. Subject Matter Jurisdiction

The plaintiff asserts that this action is properly filed in federal court pursuant to 28 U.S.C. § 1332.  Under 28 U.S.C. § 1332, "[d]iversity jurisdiction exists over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."  Hallingby v. Hallingby, 574 F.3d 51, 56 (2d Cir. 2009) (citation omitted).  Recognizing that its "loss" of $100 does not meet the amount-in-controversy threshold, the plaintiff brings this suit as a putative class action.

Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), a district court has jurisdiction over a class action premised on state law claims -- with limited exceptions that are not at issue here -- if there is diversity between any member of the class of plaintiffs and any defendant, and the amount in controversy exceeds $5,000,000.  Id. at § 1332(d)(2).  CAFA permits aggregation of the claims of individual class members to reach this amount.  Id. at § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").

If Kings Choice may not bring a class action to pursue any of its claims, then it could not meet the amount-in-controversy

5

requirement for diversity jurisdiction.  Since the SAC presents no federal questions, there would no subject matter jurisdiction over this case.  See County of Nassau v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (per curiam).

While it is ordinarily necessary to reach the issue of subject matter jurisdiction before addressing the merits of the claims, on occasion a court may assume jurisdiction -- exercise "hypothetical jurisdiction" -- in order to reach the merits of the case.  Moore v. Consolidated Edison Co. of New York, Inc., 409 F.3d 506, 511 n.5 (2d Cir. 2005).  The Second Circuit bars the assumption of hypothetical jurisdiction "only where the potential lack of jurisdiction is a constitutional question." In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz, 311 F.3d 488, 497 (2d Cir. 2002) (citation omitted).  Since the potential lack of jurisdiction here does not turn on a constitutional question, jurisdiction will be assumed and the motion to dismiss each of the claims in the SAC for its failure to state a claim will be addressed.[4]

---

[4] Since jurisdiction is assumed, it is unnecessary to decide whether each of the plaintiff's state law claims could be brought as a nationwide class action.  It is clear, however, that the plaintiff cannot bring its CUTPA claim as a class action.  While "[a]ny person who suffers any ascertainable loss of money or property . . . as a result of [a] practice prohibited by" CUTPA may bring an individual action, 42 Conn. Gen. Stat. § 110g(a), a class action may only be brought on behalf of such persons "and other persons similarly situated who are residents of this state or injured in this state." Id. at §

B. Failure to State a Claim

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  For

---

110g(b).  This text suggests that a plaintiff who is not a resident of Connecticut and not injured in Connecticut cannot bring a class action, because it cannot be "similarly situated" to other class members who are residents of Connecticut or were injured in Connecticut.  See 12 Robert M. Langer, John T. Morgan & David L. Belt, Connecticut Practice Series: Unfair Trade Practices, § 3.7 ("[T]he limitation of potential class members in section 42-110g(b) . . . can be read as denying class status to nonresidents who are injured outside of Connecticut by a violation taking place in Connecticut.").  Where the underlying statute restricts the use of the class action device, neither Rule 23 nor CAFA expands the right to bring a class action.  See Shady Grove Orthopedic Associates v. Allstate Insurance Co., 549 F.3d 137, 143 (2d Cir. 2008) ("Rule 23 does not control the issue of which substantive causes of action may be brought as class actions or which remedies may be sought by class action plaintiffs."); Bonime v. Avaya, Inc., 547 F.3d 497, 499 (2d Cir. 2008) (affirming district court's dismissal for lack of subject matter jurisdiction because the plaintiff "may not assert a class action for statutory damages under the [Telephone Consumer Protection Act] in New York state and therefore may not utilize CAFA to establish diversity jurisdiction.").

a plaintiff's claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570) (citation omitted); see also S. Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009).  Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950.

   1. CUTPA Claim

   Kings Choice alleges that Pitney Bowes violated CUTPA by "failing to fully disclose in its lease agreement the 'Equipment Return fee'" and then charging an "unconscionable, disproportionate and deceptive" equipment return fee of $100.  CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).

   To determine whether a practice constitutes a CUTPA violation, courts weigh three factors:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise -- whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of

8

> unfairness; (2) whether it is immoral, unethical,
> oppressive, or unscrupulous; (3) whether it causes
> substantial injury to consumers.

Fabri v. United Tech. Intern., Inc., 387 F.3d 109, 120 (2d Cir. 2004) (citation omitted); accord Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority, 566 F. Supp. 2d 81, 104 (D. Conn. 2008). A CUTPA plaintiff "need not establish all three criteria to demonstrate unfairness. Instead, a practice may be shown to be unfair either because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Fabri, 387 F.3d at 120 (citation omitted).

A "simple breach of contract" claim does not state a CUTPA violation. Id. at 122 n.3 (citation omitted). To plead a CUTPA claim, a plaintiff "must show aggravating circumstances," id. (citation omitted), or "some conduct that was more offensive than simply" breaching a contract. Boulevard Assoc. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1039 (2d Cir. 1995). A plaintiff who prevails on a breach of contract claim may not recover punitive damages, see, e.g., Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003) ("[I]t is hornbook law that punitive damages are unavailable in ordinary contract actions."), while a plaintiff who prevails on a CUTPA claim may. Conn. Gen. Stat. § 42-110g(a). As a result, courts have refused to allow breach of contract claims to be converted into CUTPA claims, concluding that "the Connecticut legislature, in enacting CUTPA," would not

9

have "intended such an extraordinary alteration of the common law."  Boulevard, 72 F.3d at 1039.

Applying these principles, the CUTPA claim must be dismissed.  As a simple breach of contract claim, it cannot serve to plead a violation of CUTPA as well.  Kings Choice has not alleged "aggravating circumstances" or conduct more offensive than the conduct alleged to support its breach of contract claim.  Its CUTPA claim springs from precisely the same facts and legal theory as does its breach of contract claim.  Kings Choice's assertion that Pitney Bowes's contract language and conduct were "unfair and deceptive" fails to raise this claim to the level of a CUTPA violation.

Kings Choice has also failed to state a claim under CUTPA since it has identified no practice that offends public policy, that is "immoral, unethical, oppressive, or unscrupulous," or that causes a substantial injury.  Fabri, 387 F.3d at 120.  The Lease Agreement explicitly permits Pitney Bowes to charge its "then applicable" equipment return fee upon the termination of a lease.  Since the Lease Agreement does not limit the "then applicable Equipment return fee" to the cost of the prepaid postage incurred in shipping the equipment to the defendants, Kings Choice has failed to identify any deceptive, or otherwise improper, business practice made actionable by CUTPA.  See Hudson River Cruises, Inc. v. Bridgeport Drydock Corp., 892 F.

10

Supp. 380, 387 (D. Conn. 1994) (charging fees pursuant to billing rates where parties had not determined how certain rates would be applied was not "immoral, unethical, oppressive, or unscrupulous").

Kings Choice relies on Kosiorek v. Smigelski, No. CV074014607S, 2008 WL 4779846 (Conn. Super. Oct. 9, 2008), for the proposition that charging "excessive and unreasonable fees" constitutes a CUTPA violation. Kosiorek does not help Kings Choice. In that case, an attorney charged a client $70,833.33 for his work. When a probate court valued his work and expenses at $16,000 and ordered the attorney to refund the $54,833.33 difference, the attorney refused. The court held that the attorney's conduct implicated the "unfairness and public policy violation concerns required to state a CUTPA cause of action." Id. at *3. The instant case involves neither an alleged overcharge of tens of thousands of dollars nor a defendant who is withholding fees it has been ordered to refund to a customer.

2. Breach of Contract

The elements of a breach of contract action are identical under New York and Connecticut law.[5] A plaintiff must plead "the

---

[5] The plaintiff argues that Connecticut law applies, and the defendants argue that New York law applies. Both parties have, nonetheless, cited both New York and Connecticut law; and neither party has identified a meaningful difference between the states' laws with respect to Kings Choice's common law claims.

11

formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Keller v. Beckenstein, 979 A.2d 1055, 1060 (Conn. App. 2009) (citation omitted); see Clearmont Prop., LLC v. Eisner, 58 A.D.3d 1052, 1055 (N.Y. 3d Dept. 2009). It is well established that

> the fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent. Typically, the best evidence of intent is the contract itself; if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms. If the contract is ambiguous, extrinsic evidence may be considered to ascertain the correct and intended meaning of a term or terms. Ambiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177-78 (2d Cir. 2004) (New York law) (citation omitted); see Genua v. Logan, 982 A.2d 1125, 1128 (Conn. App. 2009). Additionally,

> [w]hen parties set down their agreement in a clear, complete document, their writing should be enforced

---

Accordingly, it is unnecessary to resolve which state's law controls in the following discussion of those common law claims. Stolt-Nielsen SA v. AnimalFeeds Intern. Corp., 548 F.3d 85, 97 (2d Cir. 2008) ("[U]nder New York choice-of-law principles, the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws. . . .  [W]hen it can be said that there is no actual conflict . . . New York . . . dispense[s] with a choice of law analysis." (citation omitted)).

12

> according to its terms . . . .  Courts may not by
> construction add or excise terms, nor distort the
> meaning of those used and thereby make a new
> contract for the parties under the guise of
> interpreting the writing.

Riverside South Planning Corp. v. CRP/Extell Riverside, L.P., -- N.E.2d ---, 2009 WL 4030934, [unpaginated] (N.Y. Nov. 24, 2009) (citation omitted); see Genua, 982 A.2d at 1128 (Connecticut law).  Where the intent of the parties is clear from the four corners of the contract, its interpretation is a matter of law.  See American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 316 (2d Cir. 2006) (New York law); Wilcox v. Webster Ins., Inc., 982 A.2d 1053, 1062-63 (Conn. 2009) (citation omitted).

Kings Choice has failed to plead a breach of contract claim.  It asserts that the Lease Agreement limited the equipment return fee to the cost of the return postage that had been prepaid by the defendants.  But, the Lease Agreement did not limit the return fee to the cost of the return postage.  In fact, the Lease Agreement provided that after the lease was terminated Kings Choice was obligated to ship the postage meter to Pitney Bowes "freight prepaid," and Kings Choice was also obligated to "pay us our then applicable Equipment return fee."  The return charge was thus identified as a "fee" that was separate from the mailing cost that Pitney Bowes prepaid.  If the parties had intended that Kings Choice pay only the cost of

the prepaid freight, then they would have used that same term instead of substituting a different term.  Since the return fee clause was not limited to the cost of postage, claiming that Pitney Bowes charged more than the cost of postage does not state a claim for the breach of any contractual obligation Pitney Bowes owed Kings Choice.

Kings Choice argues that even if the Lease Agreement did not limit the return fee to the cost of postage, the Equipment Return invoice did because it stated that the return fee represents the cost to "recover" the equipment.  This argument fails.  "The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict the terms of an integrated written contract."  Benvenuti Oil Co., Inc. v. Foss Consultants, Inc., 781 A.2d 435, 439 (Conn. App. 2001); see Jarecki v. Shung Moo Louie, 745 N.E.2d 1006, 1009 (N.Y. 2001).  The Lease Agreement contained an integration clause that provided

> This Lease constitutes the entire agreement between the Parties as to the subjects addressed in this Lease, and representations or statements not included herein are not part of this lease and are not binding on the Parties.  THIS LEASE CANNOT BE AMENDED OR SUPPLEMENTED EXCEPT IN A WRITTEN AGREEMENT SIGNED BY THE PARTIES . . . .

The Equipment Return invoice therefore cannot be read to alter the terms of the Lease Agreement.

In any event, the invoice does not limit the return fee to the cost of postage.  The cost to "recover" the equipment need

14

not be interpreted as the cost of return postage only; and Kings Choice has not identified any basis to read "recover" so narrowly.

Kings Choice further argues that Pitney Bowes breached its contract with Kings Choice because a $100-equipment return fee is "unreasonable." Construing this argument as one of unconscionability, Kings Choice has failed to state a claim under this alternate theory as well. A determination that a contract is unconscionable "generally requires a showing that the contract was both procedurally and substantively unconscionable when made -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Bender v. Bender, 975 A.2d 636, 658 (Conn. 2009) (citation omitted); see Wachovia Secs., LLC v. Joseph, 56 A.D.3d 269, 270 (N.Y. 1st Dept. 2008). The party claiming unconscionability bears the burden of proof. Book v. Book, 58 A.D.3d 781, 783 (N.Y. 2d Dept. 2009); Emlee Equipment Leasing Corp. v. Waterbury Transmission, Inc., 626 A.2d 307, 312 (Conn. App. 1993). That burden is a heavy one:

> An unconscionable bargain is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense.

Schultz v. Schultz, 58 A.D.3d 616, 616 (N.Y. 2d Dept. 2009) (citation omitted); Bender, 975 A.2d at 658 (Connecticut law). Whether a contract is unconscionable is a question of law to be determined in light of the contract's context. Bender, 975 A.2d at 658 (Connecticut law); see also Laidlaw Transp., Inc. v. Helena Chemical Co., 255 A.D.2d 869, 870 (N.Y. 4th Dept. 1998).

The SAC fails to give fair notice of any claim that the contract was unconscionable when it bound the plaintiff to pay a $100 equipment return fee. It pleads no basis to find either procedural unfairness or the imposition of a contract term or obligation that shocks the conscience. Thus, this theory of a breach of contract fails as a matter of law as well.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Kings Choice alleges that Pitney Bowes has breached the implied covenant of good faith and fair dealing by charging an equipment return fee that exceeded the cost of return postage for the equipment. Under New York law, the implied covenant of good faith and fair dealing "can only impose an obligation consistent with other mutually agreed upon terms in the contract. It does not add to the contract a substantive provision not included by the parties." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 198-99 (2d Cir. 2005) (citation omitted). "[T]he implied covenant does not extend so far as to

16

undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 408 (2d Cir. 2006) (citation omitted); see also Eis v. Meyer, 566 A.2d 422, 426 (Conn. 1989).

Pitney Bowes had a contractual right to charge Kings Choice an equipment return fee. The Lease Agreement did not limit that fee to the cost of return postage, and the implied covenant cannot add such a term to the contract. Kings Choice cannot, through its breach of covenant claim, limit the equipment return fee to the cost of postage and achieve a result contrary to the terms of the Lease Agreement.

4. Unjust Enrichment

Kings Choice alleges that Pitney Bowes has unjustly enriched itself. Under both Connecticut and New York law, recovery under the theory of unjust enrichment is available only in the absence of an enforceable agreement. Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006) (New York law); Pleines v. Franklin Constr. Co., 621 A.2d 759, 762 (Conn. App. 1993). Since it is undisputed that the Lease Agreement is an enforceable contract, Kings Choice has failed to state a claim for unjust enrichment.

17

Kings Choice argues that its unjust enrichment claim "may be plead in the alternative alongside a breach of contract." Unjust enrichment may be plead in the alternative where the plaintiff challenges the validity of the contract; it may not be plead in the alternative alongside a claim that the defendant breached an enforceable contract. <u>Russell v. Russell</u>, 882 A.2d 98, 111 (Conn. App. 2005) ("[U]njust enrichment and breach of contract are mutually exclusive theories of recovery."); <u>Steven Strong Dev. Corp. v. Washington Med. Assocs.</u>, 303 A.D.2d 878, 882 (N.Y. 3d Dept. 2003) ("Inasmuch as the . . . agreement was in effect at the time plaintiff performed, and plaintiff neither demonstrated that the contract had been fraudulently induced, rescinded, abandoned, breached, frustrated or waived . . . nor established that the contract was otherwise unenforceable, recovery based upon unjust enrichment is not available to plaintiff.").

CONCLUSION

Pitney Bowes's June 15, 2009 motion to dismiss the complaint, its August 24, 2009 motion to dismiss the amended complaint, and its request in its supplemental filings of

18

November 23 and December 4, 2009 to dismiss the SAC are granted.

The Clerk of Court shall close the case.

SO ORDERED:

Dated:   New York, New York
         December 23, 2009

                                    _____
                                        DENISE COTE
                                    United States District Judge